UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**09 CIV 6258**

-----------------------------------------------------------x

SANG SHIHONG, Individually and
On Behalf of All Others Similarly Situated      C.A. No.

                                  **Plaintiff,**

                           vs.

SUPERVALU, INC., JEFF NOODLE,
and PAMELA K. KNOUS,

                                **Defendants.**

-----------------------------------------------------------x

**PLAINTIFF'S CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES LAWS**

**JURY TRIAL DEMANDED**

     Plaintiff, by and through her attorneys, alleges the following on information and belief based upon the investigation of counsel (except as to those allegations concerning plaintiff, which are alleged upon personal knowledge) which included without limitation: (a) review and analysis of public filings made by SUPERVALU, Inc. ("SUPERVALU" or the "Company"), with the Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by defendants; and (c) other publicly available information about SUPERVALU.

     1.    This action is brought as a class action on behalf of all persons who purchased the securities of SUPERVALU from April 23, 2009 through June 23, 2009, (the "Class Period"). Plaintiff's claims arise under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder and pursuant to Section 20(a) of the Exchange Act.

## SUMMARY OF ALLEGATIONS

2. The Company disseminated highly positive guidance for fiscal 2010 which was materially false and misleading. The guidance was issued to the investing public to demonstrate that the Company was financially successful going forward and to cause the market to invest in its $1 billion note offering in May 2009, which the Company desperately needed to close, to refund approximately the same principal amount of debt coming due. Then shortly thereafter, the Company admitted that its financial performance in the first quarter of fiscal 2010 would be markedly below analysts' expectations, and that guidance for fiscal 2010 would have to be revised.

3. As a result, the Company's share price dropped almost 12% from $15.56 on June 23, 2009 to $13.81 on June 24, 2009, on volume of 17,092,300 shares verses volume of 4,039,800 on June 23, 2009, and has declined thereafter.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa and pursuant to 28 U.S.C. §§1331 and 1337. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act and present federal questions.

5. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act and pursuant to 28 U.S.C. §1391(b). Many of the violations of the securities laws complained of in this Complaint occurred in this District.

6. In connection with the violations of law alleged herein, the defendants used the means and instrumentalities of interstate commerce including the United States mail, interstate wire and telephone facilities, the facilities of the national securities markets and the Internet to distribute the

false and misleading statements complained of herein.

## PARTIES

7. Plaintiff purchased shares of SUPERVALU common stock at an artificially inflated price during the Class Period, and has been damaged thereby. Plaintiff's transactions in the Company's common stock are set forth in the accompanying Certification.

8. Defendant SUPERVALU operates food stores including Acme Markets, Albertsons, and Bristol Farms, as well as a number of other well-known branded markets. The Company has offices at 11840 Valley View Road, Eden Prairie, Minnesota, 55344. Its common stock is listed on the New York Stock Exchange and actively trades under the symbol "SVU."

9. Defendant Jeff Noodle ("Noodle") is the Company's Executive Chairman and a member of the Finance Committee. During the Class Period, Noodle was the Chief Executive Officer and Chairman.

10. Defendant Pamela K. Knous ("Knous") is the Chief Financial Officer, Principal Accounting Officer, and Executive Vice-President of SUPEVALU.

## FACTUAL ALLEGATIONS

11. On April 23, 2009, the Company issued a press release reporting the Company's fourth quarter and fiscal 2009 results and providing fiscal 2010 guidance (the "April 23 Press Release"). The Company reported highly positive financial guidance for fiscal 2010. The press release stated in relevant part:

> The Company expects to generate fiscal 2010 earnings per diluted share on a GAAP basis within a range of $2.44 to $2.59 per diluted share, including charges related to timing of store closure activities of $20 million pre-tax, or $0.06 per share, which are part of the previously announced store closure and cost mitigation efforts. On an adjusted basis, fiscal 2010 earnings are expected to be in a range of $2.50 to

3

$2.65 per diluted share.

The Company has increased its fiscal 2010 debt reduction guidance by $100 million to approximately $700 million, reflecting updated fiscal 2010 capital spending guidance of approximately $750 million.

In addressing guidance, Noodle added, "Fiscal 2010 will be a year of further investment at SUPERVALU. We know that consumers are placing a greater emphasis on price, and we are taking the actions necessary to strengthen our overall competitive position. While these actions will have a short-term impact on profitability, they build a better value proposition for consumers in this economic environment and provide a foundation for future robust sales growth."

12. On April 30, 2009, the Company announced a $500 million Senior Notes offering. The press release with respect to the offering stated in relevant part that:

SUPERVALU intends to use the net proceeds of the offering to fund all or a portion of the purchase price of its 7.875% Notes due August 1, 2009 (the "SUPERVALU 2009 Notes"), the 6.95% Notes due August 1, 2009 (the "Albertson's 2009 Notes") issued by its wholly owned subsidiary, New Albertson's, Inc. ("New Albertson's"), and the 8.35% Senior Notes due May 1, 2010 issued by New Albertson's (the "Albertson's 2010 Notes" and, together with the SUPERVALU 2009 Notes and the Albertson's 2009 Notes, the "Target Notes") that are tendered and accepted by SUPERVALU for purchase in its offer to purchase for cash (the "Offer") up to $700 million aggregate principal amount of the Target Notes, which SUPERVALU commenced today, including the payment of accrued interest and any applicable early tender premium. Currently, $350 million aggregate principal amount of the SUPERVALU 2009 Notes, $350 million aggregate principal amount of the Albertson's 2009 Notes and $275 million aggregate principal amount of the Albertson's 2010 Notes are outstanding. To the extent that there are net proceeds remaining, or if the Offer is not consummated, SUPERVALU intends to use the net proceeds for general corporate purposes, including the repayment of debt, whether at maturity, through open market purchases, privately negotiated transactions or otherwise.

13. Based on the positive guidance contained in the April 23 Press Release the Company quickly announced that the size of the offering would be increased from $500 million to $1 billion.

The Company explained the reason for the increase in the offering:

> [the Company] announced ... the pricing of $1 billion in aggregate principal amount of its 8.000% Senior Notes due 2016 (the "Notes"). In response to market demand, the aggregate principal amount of Notes was upsized from $500 million, which SUPERVALU announced its intention to offer ...to $1 billion. The Notes will be senior unsecured obligations and will rank equally with all of SUPERVALU's other senior unsecured indebtedness.

14.     Absent the dissemination of the Company's guidance for fiscal 2010, the Company would not have been able to double the size of the offering, or do so on such favorable terms.

15.     On May 7, 2009, the Company announced the closing of the $1 billion note offering.

16.     Then, shortly after the note offering was closed, on June 24, 2009, the Company announced that first fiscal quarter 2010 earnings would be substantially below expectations, and that the previous guidance would be updated. The press release stated in relevant part that:

> identical store sales and net earnings for [the Company's] first quarter ending June 20, 2009 were impacted by a tougher than expected business environment, investments in price and higher levels of promotional spending. As a result, the company will be substantially below First Call consensus earnings for the quarter.
>
> Commenting on the first quarter, CEO Craig Herkert stated, "Since providing guidance on our fourth quarter earnings call, consumers have become more value focused and cautious in their spending which has pressured sales and margins greater than anticipated. We currently estimate our identical store sales will be approximately negative 3 percent. We will update annual guidance on July 28th with our first quarter earnings release." Herkert added, "I am engaged in a full review of our operations and support functions. SUPERVALU has significant potential and I look forward to sharing with you my thoughts and vision for the business in the months ahead."

17.     As a result, the Company's share price dropped almost 12% from $15.56 on June 23, 3009 to $13.81 on June 24, 2009, on volume of 17,092,300 shares verses volume of 4,039,800 on

June 23, 2009.

## NO SAFE HARBOR

18.     To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time of each of those forward-looking statements were made, the parties issuing the statements knew that the particular forward-looking statement was false, and/or the forward looking statement was authorized and/or approved by an executive officer of SUPERVALU who knew that those statements were false when made.

## APPLICABILITY OF FRAUD-ON-THE-MARKET
## PRESUMPTION OF RELIANCE

19.     At all relevant times, the market for SUPERVALU common stock was in an efficient market for the following reasons:

(a)     SUPERVALU common stock met the requirements for listing and was listed on the New York Stock Exchange;

(b)     As a company registered pursuant to the provisions of the Exchange Act, SUPERVALU filed periodic public reports with the SEC and the NYSE and was subject to the requirements for providing timely and accurate information to the investing public pursuant to the rules and regulations of the SEC and the NYSE;

(c)     SUPERVALU regularly communicated with public investors, analysts and market professionals generally regarding the release of current information, and generally assured that information was released over major newswire services on a current basis;

(d)     The market price for SUPERVALU common stock reflected the information publicly available about the Company, its results of operations and its potential products and development of those products throughout the Class Period. Thus, all purchasers of SUPERVALU common stock during the Class Period are entitled to rely on the "fraud-on-the-market" doctrine which doctrine presumes reliance on the fraudulent statements alleged herein because the market price established in an open, developed and efficient market reflects those false and misleading statements. Accordingly, reliance on the false and misleading statements alleged herein is presumed.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased the common stock of SUPERVALU from April 23, 2009 through and including June 23, 2009 (the "Class Period"). Excluded from the Class are the defendants, members of the defendants' immediate families, their legal representatives, heirs, successors and assigns and any person acting in concert with or under the control of any defendant.

21.     Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown to plaintiffs at the present time, plaintiff reasonably believes that there are hundreds, if not thousands, of members of the Class throughout the United States. During the Class Period, there were approximately 211 million shares outstanding of SUPERVALU common stock. The members of the Class are geographically dispersed throughout the United States and can be determined by the records maintained by the transfer agent for SUPERVALU.

22.     Plaintiff's claims are typical of the claims of other Class Members because the

damage suffered by plaintiff and all members of the Class arise from the same conduct. Specifically, plaintiff's' claims and the claims of members of the Class arise out of the misrepresentations and omissions made by the defendants regarding the Company's operations and financial growth, as more fully alleged herein. Plaintiff has no claims which are antagonistic to, or in conflict with, the members of the Class.

23.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the common questions of fact are:

   a)    whether the federal securities laws were violated by reason of the false and misleading statements described herein;

   b)    whether defendants misrepresented or failed to disclose material facts regarding the true status of SUPERVALU's business and operations as more fully particularized herein;

   c)    whether the individual defendants are "controlling persons" as that term is defined in Section 20(a) of the Exchange Act;

   d)    whether the price of SUPERVALU's common stock was artificially inflated during the Class Period due to the material misrepresentations and omissions complained of herein; and

   e)    whether the members of the Class have been damaged as a result of the conduct alleged herein and, if so, the proper measure of such damages.

24.    Plaintiff will fairly and adequately protect the interests of other members of the Class, and plaintiff has retained counsel competent and experienced in class and securities litigation to

prosecute the claims of the Class. Plaintiff intends to prosecute the claims asserted herein vigorously.

25.     A class action is superior to the other available methods for the fair and efficient adjudication of this controversy. The Class is so numerous and geographically dispersed throughout the United States that it would be impractical for each member of the Class to bring separate actions or be joined in one individual action. In addition, the individual damages suffered by members of the Class may be relatively small when measured against the potential costs of bringing this action, thus, making the expense and burden of litigation appropriate for class action treatment. Also, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein.

26.     There will be no difficulty in the management of this litigation as a class action. The names and addresses of record owners of the shares of the Company's common stock may be determined through the transfer agent, and notice can be provided to such persons through appropriate means of notice through publication, mailing and notices over business wire services in a form similar to those customarily used in class action litigation arising under the federal securities laws.

### FIRST CLAIM FOR RELIEF
### (Section 10(b) of the Exchange Act and Rule 10b-5 Against all Defendants)

27.     Plaintiff repeats and realleges each and every allegation as if set forth in full herein.

28.     Throughout the Class Period, defendants, singly and in concert, directly or indirectly, engaged in a common plan, scheme and course of conduct described herein, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and a course of business which operated as a fraud upon plaintiff and other members of the Class; made various false statements of

9

material facts and omitted to stated materials to make the statements made not misleading to plaintiff and the other members of the Class; and employed manipulative or deceptive devices and contrivances in connection with the purchase and sale of SUPERVALU stock.

29. The purpose and effect of defendants' plan, scheme, and course of conduct was to close a $1 billion note offering, which was needed to refund existing outstanding indebtedness of the Company which was shortly coming due.

30. Defendants had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them to the SEC, securities analysts and members of the investing public, including plaintiff and the Class.

31. As a result of the foregoing, the market price of SUPERVALU securities was artificially inflated during the Class Period. In ignorance of the falsity of the reports and statements, and, the material misstatements by defendants regarding the financial condition and growth prospects of SUPERVALU during the Class Period, and the deceptive and manipulative devices and contrivances employed by defendants, plaintiff and the other members of the Class relied, to their damage, on the reports and statements described above and/or the integrity of the market price of SUPERVALU stock during the Class Period in purchasing SUPERVALU common stock at prices which were artificially inflated as a result of defendants' false and misleading statements.

32. Had plaintiff and the other members of the Class known of the material adverse information which defendants did not disclose, they would not have purchased SUPERVALU common stock at the artificially inflated prices that they did.

33. Defendants' concealment of this material information served only to harm plaintiff and the other members of the class who purchased SUPERVALU common stock in ignorance of the financial risk to them as a result of such non-disclosures.

34. As a result of the wrongful conduct alleged herein, plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

35. By reason of the foregoing, defendants have violated Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for the substantial damages which they suffered in connection with their purchase of SUPERVALU common stock during the Class Period.

**SECOND CLAIM FOR RELIEF**
**(For Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants)**

36. Plaintiff repeats and realleges each and every allegation set forth in full herein. The allegations of this Claim pertain only to defendants Noodle and Knous.

37. The Individual Defendants, by virtue of their offices and directorships were at the time of the wrongs alleged herein, controlling persons of SUPERVALU in the meaning of Section 20(a) of the Exchange Act. These defendants had the power and influence over SUPERVALU, and exercised that power during the Class Period.

38. These Defendants' positions made them privy to material facts regarding SUPERVALU during the Class Period, and they had the ability to obtain these facts by virtue of their positions.

39. By reason of the conduct alleged in the First Claim for Relief, these Defendants are

liable for the aforesaid wrongful conduct and are liable to the plaintiff and the members of the Class for the substantial damages which they suffered in connection with their purchases of SUPERVALU common stock during the Class Period.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY.

WHEREFORE, Plaintiff, on his own behalf, and on behalf of the other members of the Class, prays for judgment as follows:

1)       Declaring this action to be a proper class action, certifying the Plaintiff as a Class representative and his counsel as Class Counsel;

2)       Declaring and determining that the defendants violated the federal securities laws by reason of their conduct as alleged herein;

3)       Awarding money damages against the Defendants, jointly and severally, in favor of the Plaintiff and the other members of the Class for all losses and injuries suffered as a result of the acts and transactions complained of herein, together with prejudgment interest on all of the aforesaid damages which the Court shall award from the date of said wrongs to the date of judgment herein at a rate the Court shall fix;

4)       Awarding Plaintiff the costs and expenses incurred in this action, including reasonable attorneys', accountants' and experts' fees; and

6)       Awarding such other relief as may be just and proper

Dated: New York, New York
       July 13, 2009

ROY JACOBS & ASSOCIATES

By: /s/ Roy L. Jacobs

Roy L. Jacobs (RLJ 0286)

60 East 42nd Street 46th Floor
New York, NY 10165
Tel. (212) 867-1156
Fax (212) 504-8243

rljacobs@pipeline.com

*Attorneys for Plaintiff*

13

## PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint of SUPERVALU, Inc. and certain other defendants.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5. Plaintiff made the following transactions during the Class Period (April 23, 2009 through June 23, 2009) in the common shares of SUPERVALU:

| Purchases | | | Sales | | |
|---|---|---|---|---|---|
| Date(s) | Number of Shares | Price | Date(s) | Number of Shares | Price |
| 6/12/09 | 300 | $16.20 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

6. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7. I declare under penalty of perjury, this 30th day of June 2009 that the information above is accurate.

                                                Sang Shihong
                                              E-signed